UNITED STATES DISTRCIT COURT
EASTERN DISTRICT OF KENTUCKY
AT COVINGTON

NOV - 7 2016

CASE 2:16-CV-196
JUDGE DLB-JGW

TERRI SMILEY
AN AMERICAN SEAMAN
1519 HUSBANDS ROAD
PADUCAH, KY 42003

                PLAINTIFF

VS.

              : **COMPLAINT AND JURY DEMAND**
              : * 28 U. S. C. 1916 – No Filing Fee

AMERICAN ELECTRIC POWER CO.   : * THE JONES ACT (46 U.S.C. 688)
1 RIVERSIDE PLAZA                   : * GENERAL MARITIME LAW
COLUMBUS, OH 43215

SERVE:
C T CORPORATION SYSTEM
306 W. MAIN ST.
SUITE 512
FRANKFORT, KY 40601

AND

INDIANA MICHIGAN ELECTRIC CO.
1 RIVERSIDE PLAZA
COLUMBUS, OH 43215

SERVE:
C T CORPORATION SYSTEM
150 WEST MARKET STREET
SUITE 800
INDIANAPOLIS, IN 46204

AND

1

```
THE MOTOR VESSEL CHUCK ZEBULA    :
1 RIVERSIDE PLAZA                :
COLUMBUS, OH  43215              :
                                 :
SERVE:                           :
C T CORPORATION SYSTEM           :
306 W. MAIN ST.                  :
SUITE 512                        :
FRANKFORT, KY  40601             :
                                 :
                                 :
          DEFENDANTS             :
```
---

Comes now the Plaintiff, an American Seaman, by and through undersigned counsel, brings this her original COMPLAINT AND JURY DEMAND to this Honorable Court pleading as follows:

## I.   PARTIES

1. Plaintiff is **TERRI SMILEY**, a domiciled permanent resident of **Kentucky**, who is at all times pertinent hereto **An American Seaman** who was assigned to and worked in this District and this Division aboard various commercial barges and towboats owned and operated by the Defendants.  Plaintiff seaman presently resides at 1519 Husbands Road, Paducah, McCracken County, Kentucky 42003.

2. Defendant is **AMERICAN ELECTRIC POWER COMPANY, AEP River Operations Division,** maintaining its permanent business address and corporate operations home office at: 1 Riverside Plaza, Columbus, Ohio 43215, at all times pertinent hereto Plaintiff's employer as defined in 46 U.S.C. 688, The Jones Act, and being routinely engaged in the river towing industry by owning, operating and navigating millions of tons of coal and other bulk commodities by Defendant's river

boats and barges, same being crewed by Defendant's employees, on the navigable waters of **Kentucky** and specifically in this District and Division.

3. The Defendant is, **INDIANA MICHIGAN ELECTRIC COMPANY,** at all times pertinent hereto a foreign corporation doing business in the navigable waters of this district and this division and being the owner and/or operator of the Motor Vessel Chuck Zebula as of the date of the injury of Plaintiff/Seaman. Indiana Michigan Electric Company is engaged in the commercial transport of barges and bulk cargo and operates its equipment by way of various seaman and/or longshoreman for the purposes of navigation, repair and maintenance.

4. The Defendant is, **MOTOR VESSEL CHUCK ZEBULA**, at all times pertinent hereto an inland river towing vessel being further described as a twin screw towboat, 166 x 48, built in 2008 by Quality Shipyards, Houma, Louisiana and bearing official Coast Guard number 1209481.

## II. JURISDICTION

5. Plaintiff is a Jones Act Seaman. (46 U.S.C. 688)

6. Defendant AEP is a Jones Act employer.

7. Jurisdiction is proper in this Honorable District Court inasmuch as the underlying claims, injuries and disabilities arose from incidents occurring in **Kentucky** on the navigable waters of the Ohio River, and the Plaintiff is a permanent resident of the Commonwealth of **Kentucky** assigned to work aboard various Motor Vessels in this District and Division, and the Jones Act Employer conducts marine business operations in this District and Division daily and regularly for more than 20 years and is subject to service of process here as are the Motor Vessels upon which Plaintiff Seaman Smiley was assigned when injured and disabled.

3

8. Any pre-requisite statutory jurisdictional minimum monetary issues in controversy are met and exceeded in this case. 28 U. S. C. 1916 provides for non – prepayment of filing fees.

9. Jurisdiction is proper inasmuch as the claims in this action are concurrently based on the established General Maritime Law of the United States as has been judicially determined and as multiple items of unseaworthiness of Defendant's marine barges and towboats may be applicable to this case.

10. Inasmuch as the General Maritime Law incorporates pertinent case law, statutes, the Federal Code of Regulations, and legislated rules and acts, Plaintiff specifically pleads the Federal Age / Gender Discrimination Act, and incorporates Firestone Textile Co. Div. v. Meadows recognized a "cause of action for retaliatory discharge when the discharge is motivated by the desire to punish the employee for seeking [workers' compensation] benefits to which he is entitled by law." 666 S.W.2d 733, 734.

### III. FACTS

11. Plaintiff is an American Seaman and moreover is a unique and exceptionally accomplished seaman. (See **Exhibits # 1** attached).

12. Plaintiff began her maritime career in 1984. Seaman Smiley exhibited extraordinary work ethic, meticulous attention to detail, and superior management qualities as an able bodied seaman.

13. First hired by Defendant in 1991 as a cook in the galley of Defendant's various towboats her ambitions were to graduate from the galley and ascend to the pilot-house as a river pilot, a feat all-but-unheard-of during the 20th Century. She was

4

appropriately able to advance her career up the corporate maritime ladder as one of Defendant's outstanding maritime employees. She earned the opportunity for advancement, made good on those opportunities, and during her employment received multiple awards, industry recognition and held prestigious office in professional associations related to the American marine industry.

14. Graduating from the galley up to the pilothouse was neither easy nor automatic. She first had to prove her physical stamina, strength, and ability as a member of the deck crew. Defendant worked Plaintiff on their barges where she performed the duties of Deckhand for more than a year, standing a square watch on Defendant's towboats, on hundreds of Defendant's barges and in all weathers. She mastered floatilla husbandry including rigging applications accompanying the successful navigation of the Ohio and other Western Rivers. Plaintiff endured the heaviest of manual labors.

15. Additional decking duties followed with an advancement to the position of Second Mate. Plaintiff was responsible for the safety and assigned duties of Defendant's deck crew-men on her watch. As second mate Plaintiff is both a leader and supervisor of the men assigned to her. Defendant assigned her to 2nd mate duties for four years running.

16. In 2002 Seaman Smiley earned her Coast Guard License and was finally cleared by the Defendant to ascend to the wheelhouse of Defendant's towboats in 2005. (USCG License # 2636331). Plaintiff received recognitions including awards for her abilities as one of Defendant's valued and accomplished towboat personnel. **(Exhibit # 2)**

### IV. INJURY, EXCABBERATION, DISABILITY, TERMINATION

**Injury; Surgeries; Exacerbation; Falling Ill on M/V Zebula; Termination**

17. Plaintiff sustained an injury to her right knee in 2003 in a traffic accident while off the boat on her days / time off. She underwent surgery in Kentucky and after an

appropriate convalescence was certified to return to the Defendant's boats by Defendant's doctors. Seaman Smiley states that the uneven walking surfaces, stairs, ladders, and wet slick surfaces exacerbated her prior knee injury to all of which was reported as required by Defendant to her supervisors on an ongoing basis from 2004.

18. Plaintiff states during the year preceding her final days on the Defendant's boats she voiced her concern more about the knee pain which was worse when aboard the vessels, especially when she had to ascend or descend the steps on Defendant's boats. During 2014 Seaman Smiley received medical care for her right knee and was told by physicians her job was aggravating the original injury. Eventually the pain was so bad she was scheduled for a second knee surgery planned ahead for January 13, 2015. This was communicated to the Defendant's office to allow for her work schedule to be synchronized accordingly.

19. Defendant called Plaintiff as was the normal rotation of crew personnel to duty aboard the boat in late 2014. Plaintiff was assigned to the **Motor Vessel Captain Jerald Boggs** as 'pilot'. **(Exhibit # 3).** Defendant's port captain requested Seaman Smiley to 'stay on' the boat until Christmas was over which she agreed to do. On December 26th, 2014 Plaintiff was relieved by normal change-of-crew. She did not know that was the last day she would serve on Defendant's boats.

20. Plaintiff went home and went through the second knee surgery January 13th, 2015 as scheduled. Following her convalescence she was summoned by the Defendant for a 'return to work' physical exam. Plaintiff's prescribed pain medication included 'oxycotin' caused her to 'pee dirty'. Plaintiff was told they would not finish the exam because of the urinalysis, to go home. As instructed Plaintiff left the exam stopping to have lunch consisting of a BBQ sandwich and a beer when the Defendant's clinic called by phone and told her to return to the clinic. Plaintiff did as ordered. Upon her return she told the clinic 'I was right in the middle of having a BBQ sandwich and cold beer' and was then given a second urinalysis but this one was a Coast Guard test. Plaintiff was then

6

administered a Breathalyzer.  Although on her personal days off and not ordered to return to any vessel or report to any duty of any kind the Defendant elected to terminate Plaintiff's employment by 'firing' Seaman Smiley on April 8, 2015….. the excuse being that Seaman Smiley's Breathalyzer, the one given to her on her personal days off, indicated alcohol. The Coast Guard urinalysis test came back clean.

## Medical Emergency Aboard Defendant's Boat Caused Permanent Injury

21.  On or about November 18th, 2013 Seaman Smiley became 'deathly' ill aboard the **M/V Chuck Zebula (Exhibit # 4)** on the Ohio River in the navigable waters of the Commonwealth of Kentucky.  Begging for relief from duty Plaintiff pleaded with her supervisor to allow her to exit the boat to search out needed medical care and/or hospitalization.  Plaintiff was denied relief by the Defendant's office because of a dysfunctional and unseaworthy corporate policy.  Defendant approved her to get off the boat between her watches and go to a small clinic located near the landing of Rockport, Indiana. That small clinic could not provide the medical care she needed.  She was ordered to return to the boat which she did.  Despite her relief pilot, the pilot that was sent to the boat to take over Plaintiff's duties, being already on the boat the Defendant Jones Act employer adamantly refused authorization for Plaintiff to be relieved of duty to go seek appropriate medical attention.  This Intentional Infliction of Emotional Distress intentionally, recklessly and wantonly caused by Defendant nearly cost Plaintiff her life.

22.  Upon returning to the boat the Plaintiff became so morbidly ill that she was assisted by the other crewmen during repeated bouts of 'gagging', 'throwing up' and becoming too weak to stand, walk or talk. Begging the Captain to let her go to the hospital she was told she'd have to wait until Defendant's office opened the next morning.  Plaintiff was held overnight aboard the **M/V Chuck Zebula** against her will and against her training.

7

23. At change of watch at 0600 November 19th, 2013 Plaintiff was so ill she nearly died on the boat. Her respiratory function was so impaired she was assisted off the boat and into an ambulance by first responders and employees of the Rockport landing, then rushed to the Owensboro, Kentucky hospital. Upon arrival at the hospital Plaintiff was unable to stand and fell to the floor before being placed on a hospital gurney. Plaintiff was emaciated, dehydrated, immobile, blacking out and experiencing semi-consciousness and unconscious episodes with terrifying painful bouts of respiratory-arrest. Emergency Room physicians' examination revealed Plaintiff required an emergency tracheotomy to save her life. The first emergency trach incision was ineffective ( cut too high ) and the breathing tube failed. Plaintiff flatlined. In the midst of a 'near-death-experience' Plaintiff remembers the doctors and nurses screaming at her and at each other saying: 'Mame! Mame!' 'Please!' 'We're losing her!' A second doctor performed a second emergency tracheotomy with a second incision into Plaintiff's throat which accomodated air into Plaintffs lungs. Plaintiff remained in the Owensboro, Kentucky hospital for five days. **(Exhibit # 5).** Plaintiff then was forced to make additional emergency trips three additional times to hospital emergency rooms for care involving the trach clogging with blood and mucus and cutting off Plaintiffs breathing. Plaintiff describes the pain she experienced during this episode as being easily the worst, most painful and nightmarishly haunting experience of her life.

24. Plaintiff has suffered disfiguring permanent scarring to her throat on the exterior. Plaintiff has also suffered disabling scarring on the interior of her neck and throat as a result of the incident of November, 2013. Plaintiff has since that time been caused to be unable to swallow normally, clear her throat or breath normally, and experiences gagging episodes from what the doctors explain is a damaged and malfunctioning 'golopatus'. These issues were chronic and were known to the Defendant's supervisory and human resources personnel. The throat injury and damage causes Plaintiff to unexpectedly gag and throw up on an sporadic and unpredictable basis, and is getting worse rather than better.

8

## V.  CAUSATION

25. Plaintiff states the injuries and disabilities suffered by her are causally related to the negligence, gross negligence, and willful wanton reckless indifference of the Defendant AEP to the medical needs and requests for medical assistance from Plaintiff.

26. Plaintiff states the injuries and disabilities suffered by her are causally related to the unseaworthiness of the Motor Vessels and their flotillas to which she was assigned.

27. Plaintiff states injuries and damages suffered by her were a direct result of Defendant's negligent policies and procedures which proscribed maritime cure being adequately available, responsible, and complete.

28. Plaintiff states Defendant terminated her employment because of her age, her gender and her disabilities suffered to her during her employment by and with the Defendant to all of which amounts to 'wrongful discharge' and contrary to law.

29. Plaintiff states she has not been provided maritime maintenance in an amount and at a rate that can reasonably be deemed fundamentally fair or adequate.

30. Plaintiff states Defendant failed to provide her adequate post injury rehabilitation including but not limited to physical, emotional and employment / re-employment opportunities or training.

31. Plaintiff states because of her disabilities suffered during her employment with Defendant she has been unable to find full time employment and is reduced to 'tripping' for companies as an extra or on an 'as needed – casual' basis.

## VI.  INJURIES AND DAMAGES

9

32. Plaintiff states she has lost wages, income, an irreplaceable fringe benefit package including a retirement program and suffered a diminution in her economic earning capacity that is both permanent and progressive.

33. Plaintiff states she has sustained permanent and progressive injuries to her person which are physical, emotional, mental and which cause her to endure daily hardship and pain and suffering including worry, anguish, torment, fear, apprehension and depression and including permanent scarring to her neck and knee.

34. Plaintiff states she has been caused to expend and will be progressively caused to spend for medical care, cure, pharmaceuticals, medical devices including knee braces, treatment, maintenance and services which she cannot afford, for conditions causally related and proximately caused by Defendant, all to which she has not yet achieved a maximum medical recovery.

## VII. PRAYER

**WHEREFORE, MAY IT PLEASE THIS HONORABLE ADMIRALTY COURT,**
Plaintiff Seaman Terri Smiley (CG License # 2636331), as a ward of court, places her plight into the hands of this Admiralty court seeking:

1. Any and all damages including a permanent diminution in her economic earning capacity, lost wages past and future,

2. Reinstatement of her fringe benefit package as was provided to her by the Defendant including all insurances, options and retirement;

3. Physical pain and suffering including scarring which is chronic, permanent and progressive,

4.  Mental, emotional, and psychological pain and suffering past and future,

5.  For reasonable attorney fees and the costs and expenses of bringing these claims to this court;

6.  For pre and post judgment interest at the maximum rate permitted by law;

7.  For General Maritime maintenance and cure;

8.  For all damages permitted by law as is supported by the facts relative to the wrongful termination defined hereinabove;

9.  For treble damages as is supported by federal or state law, statute, as may be adopted by the General Maritime Law;

10. And in addition thereto seeks any and all alternative, additional or adscititious award deemed by this Honorable Court just, fit and proper.

**PLAINTIFF DEMANDS TRIAL BY JURY.**

*/s/ B. Katy Lawrence*
B. Katy Lawrence, Attorney for Plaintiff
Kentucky Bar # 95762
107 East High Street
Warsaw, KY 41095
Phone (859) 567-8500
Fax (859) 567-8513

*/s/ Meredith L. Lawrence*
Meredith L. Lawrence, Attorney for Plaintiff,
(*Pro hac forthcoming*)
Ohio Bar # 0029098
107 East High Street
Warsaw, KY 41095
Phone (859) 567-8500
Fax (859) 567-8513

## **VERIFICATION**

The undersigned hereby states and avers that the allegations set forth in the foregoing Complaint are true and accurate to the best of her information and belief.

*[signature]*

**TERRI SMILEY**

Plaintiff

COMMONWEALTH OF KENTUCKY
COUNTY OF McCracken

SUBSCRIBED, sworn to and acknowledged before me by TERRI SMILEY, this 4 day of November, 2016.

*[signature]*

**Notary Public/State at Large**
My Comm. Expires: 9. 22. 2020

12